**In re BELL & BECKWITH, Debtors.**

**Bankruptcy No. 83–0132.**

United States Bankruptcy Court, N.D. Ohio, W.D.

July 23, 1992.

Frank J.P. McManus, Toledo, Ohio, for Edward P. Wolfram, Sr. and Mabel Wolfram.

Mary Ann Whipple, Toledo, Ohio, for Trustee.

Stephen P. Harbeck, Washington, D.C., for SIPC.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Objection to the Trustee's treatment of the claims of Edward P. Wolfram, Sr. [hereinafter "Mr. Wolfram"] and his wife, Mabel R. Wolfram [hereinafter "Mrs. Wolfram"], in the liquidation of the Debtor–Brokerage in the underlying bankruptcy proceeding. Objection to the Trustee's treatment of their claims was filed by Mr. Wolfram on behalf of Mrs. Wolfram as executor of her estate, and separately on his own behalf. At the Hearing, the parties presented the evidence and arguments which they wished the Court to consider in reaching its decision. Post Hearing memorandums were submitted by the Wolframs, the Trustee, and the Securities Investor Protection Corporation [hereinafter "SIPC"]. The Court has reviewed the testimony, exhibits, and arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that while the claims are valid claims against the Debtor–Broker, the Trustee's treatment of the claims as being outside SIPC coverage is based upon an accurate interpretation and application of the Securities Investor Protection Act of 1970 [hereinafter "SIPA"]. 15 U.S.C. § 78aaa et seq.

## FACTS

Bell & Beckwith, the Debtor, was a stock brokerage firm located in Toledo, Ohio. The brokerage operated as a partnership, and was managed by Edward P. Wolfram, Jr. (Mr. Wolfram's son) at the time of the Filing. Starting in approximately 1973, Edward P. Wolfram, Jr. began systematically diverting cash and securities held by the brokerage for his own personal use. By the time a Securities and Exchange Commission examiner discovered Mr. Wolfram Jr.'s fraud, Mr. Wolfram Jr. had diverted approximately Forty-six Million Dollars ($46,000,000.00) in cash and securities.

On February 10, 1983, the United States District Court for the Northern District of Ohio, Western Division, entered an Order declaring the customers of Bell & Beckwith in need of protection under the provisions of SIPA. 15 U.S.C. § 78aaa et seq. Concurrently, the District Court Ordered the liquidation proceeding of the Debtor–Broker removed to the United States Bankruptcy Court for the Northern District of Ohio, Western Division, pursuant to § 78eee(b)(4) of SIPA. 15 U.S.C. § 78eee(b)(4).

SIPC was established under SIPA as a nonprofit corporation responsible for insuring the accounts of customers with member brokerage firms. SIPC's responsibilities include the advancement of funds to the Trustee of the Debtor–Broker for the purpose of satisfying the net equity claims of customers against the insolvent Debtor–Broker. 15 U.S.C. §§ 78fff(a)(1)(B), 78fff–3(a).

Edward P. Wolfram, Sr. and Mabel R. Wolfram had timely submitted claims to the Trustee in liquidation of the Debtor–Broker based upon various accounts held in their names. The Trustee determined that certain of these claims were not eligible for priority coverage under SIPA and as a result, the Wolfram's objected to the treatment of four (4) of their claims. The four (4) claims in question relate to the following accounts: (1) Edward P. Wolfram Sr.'s Special Capital Account, (2) Mabel R. Wolfram's Customer Account, (3) Edward P. Wolfram Sr.'s Customer Account, and (4) Edward P. Wolfram Sr.'s Drawing Account.

## EDWARD P. WOLFRAM, SR.'S SPECIAL CAPITAL ACCOUNT

Mr. Wolfram had claimed Eighty-seven Thousand Five Hundred Forty-eight and 20/100 Dollars ($87,548.20) of his Special

Capital Account for reimbursement. This Special Capital Account was established at the time of his retirement from Bell & Beckwith, and coincided with his change in status from a general partner to a limited partner on June 1, 1972. The Retirement Agreement which Mr. Wolfram entered into with Bell & Beckwith on June 1, 1972 states at ¶ 4:

> It is understood and agreed that all of Wolfram's Special Capital, from and after June 1, 1972, shall remain as Capital of the firm and be subject to the risk of the business; and any claims of either himself, his heirs, legal representatives or beneficiaries to such capital shall be subordinated to the claims of present and future creditors of the firm.

Defendant's Exhibit S, ¶ 4.

As a result, the funds in Mr. Wolfram's Special Capital Account are capital of the Debtor–Broker and subordinated to the claims of creditors.

At the Hearing, the parties agreed that: (1) the claim is not entitled to reimbursement by SIPC under SIPA, 15 U.S.C. § 78aaa *et seq.;* and (2) it is a valid claim against the general estate of Bell & Beckwith to be paid pursuant to the provisions of the Bankruptcy Code if, and to the extent that there is property of the estate available to pay such claims. Therefore, the status of this account is no longer at issue and a decision is not required by this Court relating to the Trustee's classification of Mr. Wolfram's Special Capital Account.

## MABEL R. WOLFRAM'S CUSTOMER ACCOUNT

Mrs. Wolfram had a customer account with a net equity value of Thirty-two Thousand Four Hundred Ninety-two and 41/100 Dollars, ($32,492.41), on February 5, 1983, the date of filing. At the Hearing, the Trustee acknowledged that certain of the securities in this account were in fact registered in Mrs. Wolfram's name as "customer named securities" under SIPA § 78*lll*(3). As such, they are non-negotiable instruments and the Trustee agreed to turn them over to her Estate. These customer named securities had a filing date value of Eight Thousand Nine Hundred Eighty-six and 14/100 Dollars ($8,986.14), leaving a balance of Twenty-three Thousand Five Hundred Six and 27/100 Dollars ($23,506.27) at issue in Mrs. Wolfram's customer account.

The Trustee has refused to provide reimbursement of this remaining balance based upon his determination that the account has a zero net equity value and therefore is not entitled to reimbursement by SIPC under SIPA § 78fff–2(a)(4), (b)(1). This determination relies upon a document dated May 23, 1974, and signed by Mabel R. Wolfram. This document authorized Bell & Beckwith to treat the accounts of Mabel Wolfram and Zula Wolfram (Edward P. Wolfram, Jr.'s wife) as one. (Defendant's Exhibit D–1). At the time of filing on February 5, 1983, Zula Wolfram's accounts were at a deficit level of Twenty-four Million Six Hundred Eighty-nine Thousand Seven Hundred Ninety-seven and 66/100 Dollars ($24,-689,797.66). In accordance with the above referenced document, the Trustee has set off Mabel Wolfram's customer account against the deficit balance in Zula Wolfram's account resulting in a zero net equity value in Mabel Wolfram's customer account.

The May 23, 1974 document is clear and unambiguous on its face and specifies no limits as to its duration or effect. No documents have been found revoking the agreement and Mr. Wolfram testified to having no knowledge of Mrs. Wolfram having ever revoked or modified the agreement either verbally or in writing. Zula Wolfram's account had insufficient cash and securities in it to cover its margin requirements in 1974 when the document was signed by Mabel Wolfram. Due to the fraud perpetrated by Edward Wolfram, Jr., the negative value of Zula Wolfram's accounts was not discovered until February of 1983 by the Securities and Exchange Commission Examiner.

## EDWARD P. WOLFRAM, SR.'S CUSTOMER ACCOUNT

Edward P. Wolfram, Sr. maintained an acknowledged customer account with Bell & Beckwith with a net equity value of Four Thousand Four Hundred Fifty-one and 63/

100 Dollars ($4,451.63). As of the date of the Hearing, the Trustee had paid out Sixty-one point Five Percent (61.5%) of the value of this account pursuant to a First Partial Distribution Order of this Court. The amount in contention and the subject of Mr. Wolfram's objection is therefore One Thousand Seven Hundred Thirteen and 88/100 Dollars ($1,713.88). The Trustee has determined that Mr. Wolfram is not entitled to an advancement in funds from SIPC to cover the remaining value of the account because he falls within the exception to SIPC advances as a limited partner with greater than Five Percent (5%) interest in the partnerships net assets or net profits. 15 U.S.C. § 78fff–3(a)(4). It is this determination to which Mr. Wolfram objects.

Mr. Wolfram's Special Capital Account of Eighty-seven Thousand Five Hundred Forty-eight and 20/100 Dollars ($87,548.20) makes up Eight point One Percent (8.1%) of the total capital contributions of the general and limited partners. Mr. Wolfram's Retirement Agreement (Defendant's Exhibit S at ¶ 3) and the Limited Partnership Agreement of Bell & Beckwith (Defendant's Exhibit R at pg. 9) authorize the priority payment of Six Thousand Dollars ($6,000.00) per year to Mr. Wolfram out of the partnership's net profits. According to both documents, Mr. Wolfram is entitled to this amount even if net profits for the year fall below One Hundred and Twenty Thousand Dollars ($120,000.00). At any level of partnership profit below One Hundred and Twenty Thousand Dollars ($120,000.00) per year, Mr. Wolfram would be entitled to more than Five Percent (5%) of the total net profits of the firm.

### EDWARD P. WOLFRAM, SR.'S DRAWING ACCOUNT

Mr. Wolfram also has an account referred to as a "drawing account." This is a specialized account made available only to the partners of the firm. Their purpose was to provide a separate account for each partner into which authorized funds could be transferred (e.g. the partner's share of the partnership's net profits), authorized expenses could be deducted (e.g. insurance premiums), and from which a partner could withdraw funds. Per Mr. Wolfram's testimony, the partners were not permitted to purchase securities from these accounts.

The Trustee has classified this account as other than a "customer account" under SIPA § 78lll(2) and determined that while it is a valid claim against the general estate of Bell & Beckwith, it is not subject to reimbursement out of funds advanced by SIPC to cover priority customer account claims. It is the Trustee's failure to classify this account as a "customer account" or a "trust account" to which Mr. Wolfram has objected.

### LAW

### MABEL R. WOLFRAM'S CUSTOMER ACCOUNT

◼ The issue before the Court regarding Mr. Wolfram's objection to the Trustee's treatment of Mrs. Wolfram's customer account is whether the agreement which Mrs. Wolfram signed in 1974 is still valid and binding. Mr. Wolfram has not questioned the validity of the agreement at the time of its inception in 1974, nor does he contend that the agreement, as originally signed, has ever been cancelled or amended by Mrs. Wolfram.

While no authority has been cited to support his position, Mr. Wolfram contends that the agreement can no longer be held enforceable because the general custom of the industry requires that customers be notified of their account's pledged status on a monthly basis. He argues that since this was not done for Mabel Wolfram's account at anytime between 1974 and 1983, the agreement could not be enforced by Bell & Beckwith and therefore cannot be enforced now by the Trustee. The only evidence presented in support of industry custom was the testimony of Mr. Wolfram as to the procedure followed by Bell & Beckwith while he was a general partner with the firm. No testimony was offered as to Bell & Beckwith's procedure for the handling of customers' pledged accounts after Mr. Wolfram retired or at the time Mrs. Wolfram signed the document.

Mr. Wolfram does not question the validity of the agreement when originally signed in 1974. In addition, through his testimony at the Hearing, Mr. Wolfram acknowledges that the document was signed at a time, and with Mrs. Wolfram's knowledge, that additional margin collateral was needed for Zula Wolfram's account. The document is clear and unambiguous on its face, with no limitations expressed or implied as to duration. No evidence was presented to show any attempts or intentions of Mrs. Wolfram to either cancel or limit the agreements effect.

Based upon the foregoing, the Court can find no reason for refusing to give full weight to the terms of the May 23, 1974 agreement regardless of industry custom. Accordingly, this Court overrules the objection to the Trustee's treatment of Mabel R. Wolfram's customer account.

## EDWARD P. WOLFRAM, SR.'S CUSTOMER ACCOUNT

Mr. Wolfram posits two arguments to support his objection to the Trustee's handling of his customer account. He first argues that as of the date of filing, the capital balance of the firm was zero, and as such, there is no way to calculate the Five Percent (5%) limited partner rule of SIPA § 78fff–3(a)(4). In the alternative, he argues that he is entitled to the full protection of SIPC as a customer and that the refusal by the Trustee to honor the balance of his customer account from SIPC funds is contrary to the Limited Partnership Law of the state of Ohio, and denies him his property without due process of law. The basic issue before the Court is whether Mr. Wolfram is entitled to SIPC protection on his customer account.

SIPA prohibits the advancement of SIPC funds to customer accounts of "a limited partner with a participation of five per centum or more in the net assets or net profits of the debtor." 15 U.S.C. § 78fff–3(a)(4). Mr. Wolfram falls within this prohibition on both the net asset and net profit counts.

■ "Under SIPA, in determining the nature of a claimant's status in relationship to the debtor, the court must look to mat-

ters as they existed on the date the liquidation proceeding was commenced." *In re Bell & Beckwith*, 124 B.R. 35, 36 (Bkrtcy. N.D.Ohio 1990). This holding applies to the status of claims against the Debtor–Broker. All claims are therefore fixed in value as of the date of filing. The amount claimed will not be adjusted either up or down due to subsequent fluctuations in the value of the securities held in the claimant's accounts. 15 U.S.C. § 78*lll*(11). However, the same rule for fixing claim values does not apply to the net asset value of the Debtor–Broker. Distributions of funds for claims against the Debtor–Broker are controlled by the amount of funds obtained in the liquidation process and not based upon a net book value of the firm's assets at any one set date. The Debtor–Broker's net asset value cannot be fixed and will continually fluctuate until the liquidation process is complete and the last asset is converted into cash.

■ Mr. Wolfram's capital account represents Eight point One Percent (8.1%) of the capital contributions of all of the partners. This entitles Mr. Wolfram to Eight point One Percent (8.1%) of any asset distributions made to the partners by the Debtor–Broker upon the winding up of affairs. Ohio Rev.Code Ann. §§ 1782.30(A), 1782.-47(C) (Baldwin 1991). This is a statutorily established right to participation in the firms net assets in lieu of any agreement by the partners to the contrary. Under SIPA § 78fff–3(a)(4), it is this right to participate in the net assets of the firm at the time of filing which is controlling, not whether there is a positive net asset value on the books at that time. This Court therefore finds that Mr. Wolfram meets the requirements of SIPA § 78fff–3(a)(4) as a limited partner with a participation level exceeding Five Percent (5%) in the partnership's net assets at the time of filing.

■ SIPA § 78fff–3(a)(4) also applies if the limited partner is entitled to participate in the profits of the firm at greater than a Five Percent (5%) level. It has been established from Mr. Wolfram's Retirement Agreement (Defendant's Exhibit S), and

the Amended and Restated Limited Partnership Agreement of Bell & Beckwith (Defendant's Exhibit R), that Mr. Wolfram was to receive a pension which was tied to the firm's profits (Exhibit S at ¶ 3 and Exhibit R at pg. 3). Under the formula stated in these agreements, Mr. Wolfram's entitlement to more than Five Percent (5%) would occur in any year in which the firm's profits were greater than Zero (0) but less than One Hundred and Twenty Thousand Dollars ($120,000.00). This Court therefore finds that Mr. Wolfram also meets the requirements of SIPA § 78fff–3(a)(4) as a limited partner with a right to over Five Percent (5%) of the firms profits in any year in which the firms net profits were greater than Zero (0) but less than One Hundred and Twenty Thousand Dollars ($120,000.00).

■ In the alternative, Mr. Wolfram asserts that the refusal by the Trustee to provide him the full protection of SIPC through his acknowledged customer account is contrary to the limited liability nature of Ohio's Limited Partnership Law and denies him his property without due process of law. Under Ohio Limited Partnership law, "a limited partner shall not become liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Ohio Rev.Code Ann. § 1782.19(A) (Baldwin 1991). The denial of SIPC protection to Mr. Wolfram's customer account cannot be construed as holding Mr. Wolfram liable for the obligations of the partnership and is therefore not in conflict with SIPA. Mr. Wolfram has already received Sixty One point Five Percent (61.5%) of the value of his account through the First Partial Distribution Order of this Court. Additional distributions will be made as the liquidation process continues. No effort appears to have been made, or will be made, to hold Mr. Wolfram personally liable for any obligations left unsatisfied at the completion of Bell & Beckwith's liquidation. However, even if there were a direct conflict between Ohio Partnership Law and SIPA, the conflict would be resolved under the Supremacy Clause of the United States Constitution, and SIPA would prevail. U.S. Const. art. VI, cl. 2.

■ The refusal by the Legislature to provide SIPC protection to limited partners who hold customer accounts within their own firms has not denied Mr. Wolfram his property without due process of law. In order to be a taking, the enactment of SIPA would have to deny Mr. Wolfram property to which he would otherwise have been entitled. Had SIPA not been enacted, Mr. Wolfram would have been entitled to no more than that which Bell & Beckwith would have been able to pay out to its customers as an insolvent Broker. Ohio's Limited Partnership Law would have provided him no relief from financial losses based upon funds invested in his customer accounts. Mr. Wolfram is receiving exactly what he would have been entitled to prior to the enactment of SIPA. As such, he can claim no taking by the government without due process of law.

Based upon the above stated analysis, the Court finds that Mr. Wolfram falls within the SIPA § 78fff–3(a)(4) exception to reimbursement by SIPC of his customer account and that he has not been deprived of his property without due process. Accordingly, this Court overrules the objection to the Trustee's treatment of Edward P. Wolfram, Sr.'s customer account.

EDWARD P. WOLFRAM, SR.'S DRAWING ACCOUNT

■ Mr. Wolfram has objected to the Trustee's refusal to accord customer account status to his "drawing account" thus exempting it from reimbursement by SIPC. "SIPA does not protect all creditors of a brokerage firm against all losses in the event of the demise of the firm. Instead, SIPA protection extends to each 'customer,' a statutorily defined term of art." *In re Hanover Square Securities*, 55 B.R. 235, 238 (Bankr.S.D.N.Y.1985).

Those accounts entitled to reimbursement by SIPC are "customer accounts" as defined in § 78*lll*(2) of SIPA. That section reads in relevant part: "The term 'customer' includes any person who has a claim

against the debtor arising out of sales or conversion of securities, and *any person who has deposited cash with the debtor for the purpose of purchasing securities."* 15 U.S.C. § 78*lll*(2) (emphasis added). Congress intended to protect those who had entrusted cash or securities to their broker-dealers for the purpose of trading and investing. *SIPC v. Executive Securities Corp.*, 556 F.2d 98, 99 (2d Cir.1977).

Mr. Wolfram testified at the Hearing on his objection to the Trustee's actions, that he was not permitted to purchase any securities from the funds in his drawing account. He testified that in order to purchase securities with funds from this account, he was required to first transfer the funds to another of his securities accounts. Based upon Mr. Wolfram's testimony and the specialized nature of the drawing accounts assigned to the partners, this Court finds that Mr. Wolfram's drawing account was not an account used for the purpose of purchasing securities and therefore not entitled to priority status as a customer account. Even if it were deemed a customer account, the advancement of SIPC funds would be prohibited under SIPA § 78fff–3(a)(4) based upon Mr. Wolfram's limited partner status as discussed previously.

Mr. Wolfram further contends that if the account is not deemed by the Court to be a customer account, then it must be given special status as a "checking" or "trust" account. However, there are no provisions in SIPA for a priority status other than that of a customer account. The Trustee has acknowledged the validity of the claim against the general estate of Bell & Beckwith and recognizes its obligation to satisfy such a claim pursuant to the distribution provisions of the Bankruptcy Code if, and to the extent, there is property of the estate available to pay such claims. This is all that is required under either the Bankruptcy Code or SIPA.

The Court finds no basis for determining that the Trustee has misapplied SIPA in classifying Mr. Wolfram's drawing account as other than a customer account. Accordingly, this Court overrules Mr. Wolfram's objection to the Trustee's treatment of his drawing account as a general claim against the estate of Bell & Beckwith and not a priority status customer account.

In reaching the conclusions found herein, the Court has considered all of the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that the objections to the Trustee's treatment of the claims of Edward P. Wolfram, Sr. and Mabel R. Wolfram are hereby, OVERRULED.